# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 20 2017, 6:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Bates
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Reginald Anthony Tate, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 20, 2017 <br><br> Court of Appeals Case No. 45A04-1705-CR-998 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Salvador Vasquez, Judge <br><br> Trial Court Cause No. 45G01-1608-F1-6 |

**Altice, Judge.**

## Case Summary

[1] Reginald Anthony Tate appeals the thirty-year sentence imposed following his plea of guilty to child molesting as a Level 1 felony. Tate raises the following issues for our review:

> 1. Did the trial court abuse its discretion in admitting evidence at the sentencing hearing of allegations that Tate had sexually abused other children years before the offense in this case?

> 2. Did the trial court abuse its discretion by considering improper aggravating circumstances and overlooking significant mitigating circumstances?

> 3. Is Tate's thirty-year advisory sentence inappropriate in light of the nature of the offense and his character?

[2] We affirm.

## Facts & Procedural History

[3] Tate dated N.D. for nine years and was considered part of her family. Tate sometimes babysat for N.D.'s younger siblings, including twelve-year-old S.C. On August 11, 2016, while entrusted with S.C.'s care, Tate engaged S.C. in sexual intercourse, penetrating her vagina with his finger and his penis. S.C. told her mother what Tate had done to her, and the police were contacted. S.C. underwent a rape kit examination, and Tate's DNA was located on an anal swab, an external genital swab, and a speculum swab.

[4] On August 12, 2016, the State charged Tate under cause number 45G01-1608-F1-6 (Cause No. F1-6) with Level 1 felony child molesting and Level 4 felony

child molesting. Tate was subsequently charged under cause number 45G01-1609-F4-33 (Cause No. F4-33) with Level 4 felony child molesting, two counts of Level 5 felony criminal confinement, Level 5 felony battery, Level 6 felony strangulation, Level 6 felony battery, and Class A misdemeanor battery. The charges in Cause No. F4-33 all related to prior incidents between Tate and S.C.

[5] On March 1, 2017, Tate entered into a plea agreement whereby he pled guilty to Level 1 felony child molesting under Cause No. F1-6. In return, the State agreed to dismiss the Level 4 felony child molesting count charged under Cause No. F1-6 and to dismiss Cause No. F4-33 in its entirety. The State also agreed that Tate's sentence would be capped at the thirty-year advisory sentence for a Level 1 felony.

[6] A sentencing hearing was held on April 5, 2017, at which the State offered evidence over Tate's objection that Tate had allegedly sexually abused other children years earlier. Specifically, the State introduced police reports and a written statement from C.D.W., one of the alleged victims, who stated that Tate had used threats and physical violence to force him and two other juvenile males to perform oral sex on one another on multiple occasions. No charges had been filed relating to these allegations. The trial court ultimately sentenced Tate to thirty years executed in the Department of Correction. In pronouncing Tate's sentence, the trial court made it clear that it attributed "no weight whatsoever" to the allegations involving C.D.W. *Sentencing Transcript* at 44. Tate now appeals.

## Discussion & Decision

## 1. Admission of Evidence at Sentencing

[7] Tate first argues that the trial court abused its discretion in admitting evidence of the allegations involving C.D.W. On appeal, Tate argues that the evidence was irrelevant and unduly prejudicial. We disagree. The admission of evidence at a sentencing hearing is at the discretion of the trial court. *Couch v. State*, 977 N.E.2d 1013, 1016 (Ind. Ct. App. 2012), *trans. denied*. Ind. Evidence Rule 101(d)(2) specifically provides that the Rules of Evidence, other than those regarding privileges, do not apply in sentencing hearings.

> The rationale for the relaxation of evidentiary rules at sentencing is that in a trial the issue is whether a defendant is guilty of having engaged in certain criminal conduct. Rules of evidence narrowly confine the trial contest to evidence that is strictly relevant to the crime charged. At sentencing, however, the evidence is not confined to the narrow issue of guilt. The task is to determine the type and extent of punishment. This individualized sentencing process requires possession of the fullest information possible concerning the defendant's life and characteristics.

*Thomas v. State*, 562 N.E.2d 43, 47-48 (Ind. Ct. App. 1998). Our Supreme Court has held that uncharged crimes may properly be considered at a sentencing hearing. *Carter v. State*, 711 N.E.2d 835, 841 (Ind. 1999) (finding no abuse of discretion in the trial court's consideration at the sentencing hearing of evidence that the defendant had attempted to molest his three-year-old sister a few weeks before murdering another child).

[8]     For these reasons, we cannot conclude that the trial court's admission of evidence of the other allegations against Tate was an abuse of discretion. In any event, even if the trial court had abused its discretion in this regard, we would deem the error harmless. The trial court clearly stated that it attributed "no weight whatsoever" to the allegations concerning C.D.W. *Sentencing Transcript* at 44. In light of the trial court's statement, we are unpersuaded by Tate's bald assertion that the trial court "had to have been influenced by this evidence[.]" *Appellant's Brief* at 8.

## 2. Aggravating and Mitigating Circumstances

[9]     Tate next argues that the trial court abused its discretion in finding aggravating and mitigating circumstances. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* A trial court may abuse its sentencing discretion in a number of ways, including entering a sentencing statement that includes aggravating factors that are unsupported by the record or by omitting mitigating factors that are both significant and clearly supported by the record. *Id.* at 490-91, 493. Even if the trial court is found to have abused its discretion in sentencing the defendant, "the sentence will be upheld if it is appropriate in accordance with Indiana Appellate Rule 7(B)." *Felder v. State*, 870 N.E.2d 554, 558 (Ind. Ct. App. 2007) (citing *Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007)).

[10] Tate first argues that the trial court abused its discretion by considering his criminal history to be an aggravating circumstance. This argument is meritless. A defendant's history of criminal or delinquent behavior is a statutory aggravating factor. *See* Ind. Code § 35-38-1-7.1(a)(2). Tate's real argument is that the trial court attributed too much weight to his criminal history. It is well settled, however, that the relative weight assigned to properly found aggravating and mitigating factors is not subject to review for an abuse of discretion. *Anglemyer*, 868 N.E.2d at 491.

[11] Tate also argues that the trial court abused its discretion by failing to find his remorse to be a significant mitigating factor. Although Tate claimed to be remorseful, the trial court was in no way obligated to accept Tate's statements as sincere. *See Hape v. State*, 903 N.E.2d 977, 1002-03 (Ind. Ct. App. 2009) (explaining that "our review of a trial court's determination of a defendant's remorse is similar to our review of credibility judgments: without evidence of some impermissible consideration by the trial court, we accept its determination"), *trans. denied*. The trial court did not abuse its discretion in this regard. In any event, even if the trial court had abused its discretion in identifying mitigating and aggravating circumstances, reversal would not be warranted because, as we explain below, his thirty-year advisory sentence is not inappropriate.

### 3. Inappropriate Sentence

[12]     Finally, Tate argues that his thirty-year advisory sentence was inappropriate in light of the nature of his offense and his character. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[13]     The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is

not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[14] In order to assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offense. Tate was convicted of child molesting as a Level 1 felony, the sentencing range for which is twenty to forty years, with an advisory sentence of thirty years. Tate received the thirty-year advisory sentence. When a defendant has received the advisory sentence, he faces a "particularly heavy burden" in persuading this court that the sentence is inappropriate.[1] *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied*.

[15] The nature of the offense in this case does not support appellate sentence revision. Tate argues that "there was nothing especially egregious" about his offense. *Appellant's Brief* at 12. We strongly disagree. Tate had dated S.C.'s older sister for nine years and was considered a part of the family. Tate had known S.C. since she was in diapers. Thus, Tate violated a significant position of trust when he molested S.C. Moreover, there was evidence presented that

---

[1] Although Tate received the advisory sentence, he asks us to analyze his appropriateness argument as if he had received the maximum sentence because he received the maximum allowed under the plea agreement. We decline to do so. Tate's plea agreement does nothing to change the fact that he ultimately received the advisory sentence for the offense of which he was convicted.

Tate had repeatedly molested S.C. and physically abused her. In her victim impact statement, S.C. related an incident in which Tate choked her to keep her quiet, and when she expressed suicidal thoughts, he handed her a knife and told her to do it. Unsurprisingly, S.C. has been seriously traumatized. She indicated that she never feels safe, even in her own home, and she is no longer able to trust others. Tate's offense was nothing short of heinous.

[16] Nor does Tate's character warrant a lesser sentence. Tate has a significant and violent criminal history. In 1999, when he was seventeen years old, Tate was charged with attempted murder and aggravated battery and waived into adult court. He ultimately pled guilty but mentally ill to aggravated battery and was sentenced to five years. Although this was his only felony conviction prior to the current offense, Tate amassed several misdemeanor convictions over the next sixteen years, including multiple battery convictions. Moreover, Tate's abuse of S.C. reflects extremely negatively on his character. In sum, Tate has fallen far short of convincing us that his advisory sentence is inappropriate.

[17] Judgment affirmed.

[18] Baker, J. and Bailey, J., concur.